UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIA J.,[1]

                        Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION & ORDER

19-CV-0899MWP

## **PRELIMINARY STATEMENT**

Plaintiff Maria J. brings this action pursuant to Section 205(g) of the Social Security Act , 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been assigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 11, 13).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 11-1, 14). According to plaintiff, the ALJ made several errors when weighing the medical opinions contained in the record. (*Id.*). First, she maintains that the ALJ failed to provide good reasons for rejecting the disability opinions provided by Nicholas Violante, D.O. (Docket ## 11-1 at 10-13; 14 at 1-4). Second, she contends that the ALJ erred by partially relying on the allegedly stale opinion of osteopathic physician Leonard Kaplan, D.O.,[2] that she could perform light work. (Docket ## 11-1 at 14-18; 14 at 4).[3] Finally, she contends that the ALJ erred by rejecting all other medical opinions of record and by relying on her own lay interpretation to make her physical RFC assessment. (Docket ## 11-1 at 15-18; 14 at 4-7).

## III.    Analysis

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,*

---

[2] Both the ALJ and plaintiff believe mistakenly that the opinion was authored by plaintiff's treating neurologist Lixin Zhang, MD. (Docket ## 11-1 at 13-15; 14 at 4; Tr. 25). The record demonstrates, however, that the opinion was authored by Kaplan, to whom Zhang had referred plaintiff for treatment. (Tr. 289, 291-97).

[3] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

### A.     The ALJ's Decision and the Opinion Evidence

At step two, the ALJ found that plaintiff had the severe impairments of obesity, cervical and lumbar degenerative disc disease, bilateral knee osteoarthritis (status post reconstructive surgeries), bilateral carpal tunnel syndrome, depression, and anxiety.  (Tr. 17).  The ALJ thereafter concluded that plaintiff had the physical RFC[4] to perform light work except that:

> she can push and/or pull as much as she can lift and/or carry.  She can occasionally reach overhead bilaterally.  She can frequently handle, finger, and feel bilaterally.  She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  She can never climb ladders, ropes or scaffolds, work at unprotected heights and work with moving mechanical parts.  She must have no exposure to extreme cold.

(Tr. 21).

---

[4] Plaintiff's contentions relate only to the physical portion of the ALJ's RFC determination, even though the RFC also contains limitations related to plaintiff's mental impairments.  Thus, I address the RFC only as it relates to her physical limitations.  *See*, *e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *2 n.3 (W.D.N.Y. 2019) ("[claimant's] RFC determination also included several mental limitations; however, the [c]ourt focuses its opinion on [claimant's] physical limitations because she argues only that the ALJ's physical RFC findings lack substantial evidence").

The record contained the following medical opinions concerning plaintiff's physical functioning that were explicitly evaluated by the ALJ:

1. On July 11, 2014, January 13, 2015, and February 18, 2015, treating osteopathic physician Leonard Kaplan, DO, assessed that plaintiff could continue working light duty with restrictions, including no prolonged standing or sitting in excess of thirty minutes, no lifting weights greater than twenty pounds, and no excessive repetitive bending, lifting, or twisting.  (Tr. 289, 296, 330, 346).

2. On October 15, 2016, Hongbiao Liu, MD, performed a consultative internal medicine examination.  (Tr. 605-608). He assessed that plaintiff had moderate limitations for prolonged walking, bending, and kneeling.  (*Id.*).

3. On December 13, 2016, Robert Bauer, MD, conducted an independent orthopedic evaluation of plaintiff.  (Tr. 919-22). He opined that plaintiff demonstrated a moderate to marked temporary partial disability in her left knee.  (*Id.*).  He also opined that plaintiff was able to work, but that she should be permitted to change positions frequently, required to only occasionally lift weights up to ten pounds, and should refrain from crawling, kneeling, running, repetitive stair climbing, and restraining combative clients.  (*Id.*).

Additionally, the ALJ discussed a return-to-work note that she mistakenly attributed to plaintiff's treating neurologist Lixin Zhang, ("Zhang"), MD, but which the record demonstrates was actually authored by Kaplan as part of his July 11, 2014 treatment notes. (Tr. 25 (citing Tr. 296)).  In that treatment note, dated the same day that he assessed the work-related limitations described above, Kaplan indicated that plaintiff had "been working light duty per previous restrictions."  (Tr. 296).  Finally, the ALJ addressed several worker's compensation-related disability or impairment ratings contained in plaintiff's treatment notes documented by various medical sources, including Zhang, Kaplan, Bauer, Violante, Paul Olizarowicz, RPA-C, Own Moy, MD, Gregory Jenkins, PA-C, Joseph Cardamone, MD, Corine Cicchetti, MD, Ryan Skibitsky, PA, Andrew Stoeckl, MD, and Lisa Forestal, PA-C.  (Tr. 27-28).

With respect to the opinions authored by Kaplan, Liu, and Bauer, the ALJ gave them "little weight" on the grounds that they were "inconsistent with the overall evidence of record and the relatively benign objective medical findings of record." (Tr. 25). She also gave "little weight" to the disability or impairment ratings contained in the record, reasoning that the issue of disability was reserved to the Commissioner and that the ratings were assessed under standards applicable to workers' compensation claims rather than standards applicable to DIB claims. (Tr. 28). The ALJ gave "partial weight" to Kaplan's statement, mistakenly attributed to Zhang, which she characterized as indicating that plaintiff could "work at light duty." (Tr. 25). According to the ALJ, the overall evidence supported the conclusion that plaintiff could engage in light work, but that her "impairments are more limiting than what was concluded by Dr. Zhang." (*Id.*).

B. **Plaintiff's RFC Challenge**

As noted above, plaintiff challenges the ALJ's physical RFC determination on the grounds that the ALJ improperly weighed the medical opinions of record, resulting in a physical RFC assessment that was unsupported by any medical opinion of record. In advancing this challenge, the plaintiff perpetuates the ALJ's mistaken understanding that Zhang opined that plaintiff could perform the requirements of light duty work. In reality, the statement concerning light duty work was made by Kaplan, who opined on the same day that plaintiff's return to work was restricted by sitting, standing, lifting, twisting, and bending limitations.

The Commissioner argues that any mistake by the ALJ in this respect was harmless, reasoning that the ALJ provided an adequate basis to reject the more restrictive limitations identified by Kaplan. (Docket # 13-1 at 21 n.5). I disagree. Rather, I find that the ALJ's misidentification of the author of July 11, 2014 statement likely affected her assessment of

7

the various medical opinions of record, particularly her determination to reject the work-related limitations assessed by Kaplan and at the same time to assign "partial weight" to his statement (misattributed to Zhang) that plaintiff was capable of performing the duties of light work. On this record, I cannot conclude that the ALJ's error is harmless.

"It is well-settled that while an ALJ need not mention every item of testimony presented or reconcile explicitly every conflicting shred of medical testimony, . . . the ALJ may not ignore or mischaracterize evidence of a person's alleged disability." *Seignious v. Colvin*, 2016 WL 96219, \*4 (W.D.N.Y. 2016) (alterations, citations, and quotations omitted). Indeed, where "the ALJ's supporting rationale for [her] physical RFC assessment [is] based on several mischaracterizations of the record," the resulting RFC assessment is "legally flawed and unsupported by substantial evidence." *Id.* at \*5; *see also King v. Colvin*, 2016 WL 1398987, \*4 (W.D.N.Y. 2016) ("[w]here an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of 'not disabled,' a remand is necessary"); *Ellis v. Colvin*, 29 F. Supp. 3d 288, 302 (W.D.N.Y. 2014) ("[i]t was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record").

In her decision, the ALJ explicitly accorded "little weight" to the opinions authored by Kaplan, Liu, and Bauer. (Tr. 25). Nothing in the ALJ's decision suggests that she accounted for the relatively significant physical limitations they assessed in formulating the RFC, including those related to sitting, standing, bending, lifting, twisting, kneeling, and crawling. Rather, the ALJ's decision reflects that she did not simply discount the functional limitations assessed by Kaplan, Liu and Bauer; she effectively rejected those limitations in full by not incorporating several of the opined functional restrictions into her RFC determination.

Having rejected the opinions of Kaplan, Liu and Bauer, the ALJ apparently formulated the RFC based solely on her mistaken belief that Zhang opined that plaintiff was capable of performing light work and her own lay interpretation of the medical treatment records. As a result of the mistake, the ALJ concluded that the record contained an opinion by a treating physician that plaintiff was capable of performing light duty work without restriction; in fact, the record contained no such opinion by any of plaintiff's treating doctors. As noted, Kaplan assessed several physical limitations, including standing limitations inconsistent with the requirements of light work. Further, examining physicians Liu and Bauer assessed several physical limitations, including those related to walking, bending, kneeling, lifting, and crawling, that seemingly were not adopted by the ALJ. Had the ALJ been aware that none of plaintiff's treating physicians had opined that she was capable of light work duties, that understanding may have altered her evaluation of these other opined limitations. Accordingly, it is impossible for this Court to determine whether the ALJ would have weighed the opinion evidence in the same manner if she had appreciated that Kaplan –not Zhang –authored the July 11, 2014 light duty note. Nor can I discern whether the ALJ would have reached the same RFC determination had she not made this misidentification. Accordingly, the Court cannot conclude that the ALJ's error in interpreting this evidence was harmless. *See Vasquez v. Berryhill*, 2018 WL 824183, *3 (D. Conn. 2018) (remanding for new credibility determination and re-weighing of opinion evidence based on ALJ's "factually inaccurate" reading of the record related to his view that plaintiff only engaged in "conservative treatment"; "[w]hile the ALJ does list other reasons for discounting [p]laintiff's credibility, the opinion indicates that the ALJ strongly considered [p]laintiff's 'conservative' treatment history when determining her RFC[;] [f]or example, he declined to give controlling weight to the opinions of two of [p]laintiff's treating physicians in

9

part because he reasoned that the restrictive limitations they assessed were inconsistent with [p]laintiff's treatment history[;] [s]ince the ALJ's evaluation of the opinion evidence *and* of [p]laintiff's subjective complaints was based on inaccurately reading the record in *two* significant ways, the [c]ourt is unable to find that substantial evidence supports the RFC"); *see also George v. Comm'r of Soc. Sec. Admin.*, 2019 WL 608850, *3-4 (W.D.N.Y. 2019) (the ALJ "plainly" misstated treatment notes from treating physician regarding observations that were "important – and indeed material – to the ALJ's evaluation of [claimant's] claims" of disability; "[u]nder the circumstances, there is good reason to conclude that the ALJ's determination was indeed affected by this misstatement of the record").

        For these reasons, I conclude that the ALJ's mischaracterization of the July 11, 2014 treatment note renders her RFC assessment "legally flawed and unsupported by substantial evidence" and that remand is warranted. *See Seignious v. Colvin*, 2016 WL 96219 at *5; *see also King v. Colvin*, 2016 WL 1398987 at *4 ("[w]here an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of 'not disabled,' a remand is necessary"); *Ellis v. Colvin*, 29 F. Supp. 3d at 302 ("[i]t was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record").

        The ALJ's error is compounded by the ALJ's apparent formulation of plaintiff's RFC based upon her own lay interpretation of the medical records without reliance upon any medical opinion. As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL

1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted). "Accordingly, although the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a general rule, the Commissioner 'may not make the connection himself.'" *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment," *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (internal quotation omitted), I conclude that those circumstances are not present here.

        Plaintiff's treatment records indicate that she suffered from several physical impairments primarily resulting from injuries she suffered while employed as an aide at a mental health facility. In July 2008, plaintiff fell at work causing injury to her lumbar spine. (Tr. 284-85). She reinjured her back during an accident at work in early 2010. (Tr. 274). In 2012, she fell at work, causing further injury to her back, as well as a right knee meniscus tear. (Tr. 260-62). In January 2013, plaintiff suffered a twisting injury to her left knee. (Tr. 794). In December 2014, plaintiff was injured while moving a patient using a mechanical lift, causing further injury to her lumbar spine. (Tr. 300). In May 2015, she was injured when a patient pushed her against a wall, and in July 2015 she was pulled to the floor by a patient, resulting in cervical and lumbar strains, as well as a shoulder injury. (Tr. 355).

        Plaintiff was treated for her back impairments by both Zhang and Kaplan, including receiving medication therapies, physical therapy, and facet injections. (Tr. 250-378).

With respect to her knee impairments, plaintiff treated primarily with Violante, who prescribed anti-inflammatories, injections, and physical therapy. (Tr. 644-729, 737-40). Violante also performed several surgeries on plaintiff's knees, including a right knee patellofemoral replacement on May 13, 2014, a total left knee arthroplasty on May 20, 2016, and a total right knee arthroplasty on February 17, 2017. (Tr. 661, 724-29).

   The medical evidence detailed above demonstrates that the record in this case is not one on which the ALJ could have reached a commonsense RFC determination based on minor physical impairments. Nor is it a record on which the ALJ could reach an RFC determination without some useful functional assessment of plaintiff's limitations. Yet, that is precisely what the ALJ appears to have done by rejecting the remaining medical opinions in the record.

   I find that the ALJ's rejection of Kaplan's, Liu's, and Bauer's opinions – whether those rejections were proper or improper – effectively created an evidentiary gap in the record and that no other useful functional assessment[5] of plaintiff's limitations exists that would support the RFC determination. Remand is thus warranted. *See*, *e.g.*, *Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862 at *9 (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], and nothing suggests that the ALJ accounted for the limitations identified by these physicians in

---

[5] As discussed below, plaintiff also challenges the ALJ's consideration of the disability or impairment ratings contained throughout the record, particularly those provided by Violante. (Docket ## 11-1 at 10-13; 14 at 1-4). Irrespective of whether the ALJ adequately considered the ratings or whether he was required to recontact Violante, the ratings do not provide a functional assessment of plaintiff's limitations.

formulating the RFC"); *Stein v. Colvin*, 2016 WL 7334760, *4 (W.D.N.Y. 2016) ("[t]he ALJ's rejection of the only medical opinion in the record created an evidentiary gap in the record requiring remand[;] . . . [t]he remainder of the ALJ's decision merely summarizes the medical evidence and [claimant's] testimony and cites to treatment notes that do not address how [claimant's] impairments affect her mental ability to perform work-related functions[;] . . . [i]t is unclear to this [c]ourt how the ALJ, who is not a medical professional, determined that [claimant] retained the RFC described above when he discounted the only opinion in the record as to [claimant's] ability to work"); *Wilson v. Colvin*, 2015 WL 1003933 at *21 ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records").

Contrary to plaintiff's contention, I do not find that the ALJ erred in her assessment of the disability or impairment ratings provided by Violante. (Docket ## 11-1 at 10-13; 14 at 1-4). In her decision, the ALJ properly recognized the limited value such ratings have when formulating an RFC, but nevertheless considered the ratings and plaintiff's receipt of workers' compensation benefits when assessing plaintiff's functional limitations, acknowledging that such information "provides some insight into the severity of [plaintiff's] impairments and how they affect her ability to function." (Tr. 28). This analysis comports with applicable case law. *See John D. A. v. Comm'r of Soc. Sec.*, 2020 WL 6916751, *5 (W.D.N.Y. 2020) ("the ALJ also appropriately noted medical opinions offered in workers' compensation cases utilize

13

different standards than those required under the Social Security regulations in determining whether a claimant is disabled within the meaning of the [SSA][;] . . . [a]dditionally, [the ALJ] noted the opinions of [the physician] did not provide specific function-by-function limitations regarding plaintiff's ability to perform work-related activities but were vague and conclusory"); *Winters v. Comm'r of Soc. Sec.*, 2019 WL 4743822, *15 (S.D.N.Y. 2019) ("[t]he opinion of a physician – even a treating physician – that a claimant has a certain percentage impairment for workers' compensation purposes is not binding on the Commissioner"); *Guerra v. Comm'r of Soc. Sec.*, 2018 WL 3751292, *6 (W.D.N.Y. 2018) ("the ALJ correctly noted that the determination of disability in the context of a workers' compensation claim uses a different standard than the Social Security Act[;] . . . [a]s such, the ALJ was not bound by the treating physician's conclusions that plaintiff had varying degrees of disability for workers' compensations purposes") (internal quotations omitted), *aff'd*, 778 F. App'x 75 (2d Cir. 2019) (summary order). Although I conclude that the ALJ did not err in weighing Violante's ratings, given that Violante provided extensive treatment to plaintiff, including conducting three surgeries on her knees, the ALJ should consider on remand whether to contact Violante to request a medical source statement regarding plaintiff's functional capabilities.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

14

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
           December 11, 2020